Hillsborough
No. 78-071

FREEMAN CORSON

v.

BROWN PRODUCTS, INC. & a.

January 31, 1979

*Kahn & Brown*, of Nashua (*Kenneth M. Brown* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*James S. Yakovakis* orally), for the defendant.

LAMPRON, C.J.    Proceedings in the superior court pertaining to certain issues under the workmen's compensation law. RSA ch. 281. The issues are whether the labor commissioner improperly denied plaintiff an award for permanent bodily losses under RSA 281:26; and whether the plaintiff is eligible for an award of fees and interest under RSA 281:37-a. By agreement of the parties, these issues, in the form of five questions, were reserved and transferred to this court without rulings by *King*, J.

On January 7, 1976, Freeman Corson struck his head while working for Brown Products. This blow caused a subdural hematoma rendering him unconscious. From that date to December 18, 1978, when he died, Corson had been in an irreversible comatose state. He had lost the use of every member of his body. Defendant had conceded that Corson's condition would not change, except for the worse.

On February 2, 1977, the Superior Court (*King*, J.) ruled that Corson's injury was work-related, and held that he was entitled to receive weekly total disability benefits under RSA 281:23 and reasonable medical and hospital benefits under RSA 281:21. The parties have agreed on these matters and they are not in issue.

In November 1976, Corson commenced a separate claim seeking additional benefits under RSA 281:26 (Scheduled Impairment Award). The commissioner of labor denied the claim and his decision was appealed to the superior court. Corson also filed in that court a motion seeking counsel fees and interest under RSA 281:37-a. After a hearing, *King*, J., transferred without ruling questions A–E which will be discussed in order.

"A.    Based on the evidence and the law, is Freeman Corson entitled to benefits under RSA 281:26 for permanent impairment of the various parts of his body, in addition to the benefits already awarded under RSA 281:23 and 281:21?"

The labor commissioner properly found that: "It has now been established by medical evidence that the claimant has remained in a coma since surgery on January 7, 1976 and may best be described as a living

vegetable which will not be reversible in the future." The commissioner properly held that the law prior to July 1, 1973, required the workman to choose between scheduled benefits under RSA 281:26 and disability benefits under RSA 281:23 and :25. He also correctly held that since that date permanent scheduled impairment awards are a right of the employee "which is separate and independent of the rights provided by RSA 281:23 and 25." RSA 281:26 II.

The commissioner then referred to a hypothetical case discussed by "an unofficial Advisory Committee" comprised of management and labor and other parties who were interested in an agreed bill which apparently became RSA 281:26 (Laws 1973, 481:10). The commissioner stated that it was agreed by the committee members that a quadraplegic should have the "mental and financial comfort of receiving payment for such loss." The committee agreed, however, "that an injured person suffering permanent brain damage rendering him comatose should not . . . as his condition is such that it is not much different than a deceased person." On that basis the commissioner decided that, "considering the severe nature of the injury rendering the claimant permanently unconscious," Corson was not entitled to benefits under RSA 281:26 and "only total disability benefits under Section 23 shall continue in force."

The commissioner explained his reasoning at a hearing before the superior court, and in response to questions by plaintiff's counsel he stated as follows:

> Q. Now if the statutory language says that benefits shall be awarded simply by virtue of loss of use, there must have been some reason why you still did not award benefits. What is that reason?
>
> A. The reason is what the individual is aware he has lost.
>
> Q. Mr. Commissioner, can you point to any language within 281:26 which imposes a requirement that the recipient of Section 26 benefits have awareness, consciousness, meditation?
>
> A. There is no such provision in the statute.
>
> Q. So you are not saying that you will not award benefits to any brain damage, only when it's permanent and total brain damage?
>
> A. Right, and irreversible.

Q. And only because they don't have awareness?

A. Well that's the basic reason for my judgment.

■■ It is well established law that the intention of the legislature expressed by the words in the statute itself is the touchstone to its meaning. *Plymouth School Dist.* v. *State Bd. of Educ.*, 112 N.H. 74, 77, 289 A.2d 73, 75 (1974). In other words, the legislative intent is to be found not in what the legislature might have said, but rather in the meaning of what it did say. *Hartford Elec. Light Co. v. Water Resources Comm'n.*, 162 Conn. 89, 98, 291 A.2d 721, 728 (1971). Hence this court cannot speculate upon any supposed legislative intent not appropriately expressed in the language of the act itself. *See Naum v. Naum*, 101 N.H. 367, 369, 143 A.2d 424, 426 (1958); *Hamby v. Adams*, 117 N.H. 606, 610, 376 A.2d 519, 522 (1977).

We have also held that the legislative history of a statute can be taken into consideration in arriving at its meaning. *Nazarro v. Merrimack Sch. Dist.*, 118 N.H. 287, 290, 385 A.2d 230, 232 (1978). Reports of commissions established to prepare or recommend statutory revisions can prove to be valuable aids in construing particular statutes. J. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 48.09 (C. Sands 1973). However, the commissioner relied on the proceedings of an informal committee. No minutes of its discussions and no written report of its recommendations have been presented to us and none is apparently available. Nor is there helpful official legislative history on this legislation. The labor commissioner relied on his recollection of a discussion supposedly had in the informal committee. Personal recollections by a member of an informal committee are, for good reasons, held inadmissible as history to affect the interpretation of a statute. J. SUTHERLAND, *id.* §§ 48.09, 48.16; *see Rausch v. Nelson*, 134 N.W.2d 519 (N.D. 1965).

■■ What is of paramount importance in this case is that words such as "awareness" or "consciousness" cannot be added under the guise of legislative history to a statute which clearly states that, "The scheduled awards under this section accrue to the injured employee simply by virtue of the loss or loss of the use of a member of the body." RSA 281:26 II. When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction. *International Bus. Machine Corp. v. Brown*, 167 Conn. 123, 134, 355 A.2d 236, 241 (1974). Hence transferred question "A" must be answered from the plain words of the statute and not by speculation as to any supposed intention of the legislature. We hold therefore that "Freeman Corson [is] entitled to benefits under RSA 281:26 for permanent impairment of the various parts of his body, in addition to the

benefits already awarded under RSA 281:23 and 281:21 . . . ." The answer to question "A" is "Yes".

"B. If the preceding question is answered affirmatively, to what awards listed in RSA 281:26 I a–p inclusive, would Freeman Corson be entitled?"

It would serve no useful purpose, and most likely produce confusion, to reproduce verbatim RSA 281:26 I a–p, which sets out in detail the number of weeks to be allowed for specified bodily losses. It is sufficient to say that plaintiff argues that he should be allowed the scheduled award of the total loss of use of two arms, and in addition thereto the loss of use of two separate hands and the total loss of use of both hands; that he should be allowed benefits for the total loss of use of both legs, and in addition for the total loss of use of two feet and the total loss of use of both feet; that he should receive a scheduled award for the loss of use of binaural hearing, and in addition for the loss of hearing in two ears; that he should be entitled to the loss of bilateral vision, and also for the loss of vision in both eyes. By the plaintiff's computation, he would be entitled to awards totaling more than 3000 weeks at the rate provided by RSA 281:23. As Corson is entitled to a weekly compensation rate of $142.71, a total award of over $400,000 would result.

However, RSA 281:26 I(w) specifically provides as follows:

> Subsequent amputation: Upon amputation of a member resulting from an original or subsequent injury which has been preceded by the loss of a component part thereof, an additional award shall accrue on the basis of the difference between the award for the newly established loss and the award for the original loss.

This indicates a legislative intent to prevent duplication or cumulation of awards. Thus if there is an award for the loss of an arm there cannot be an award also for the loss of the hand and arm from the same extremity. *Nabb v. Haveg Indus., Inc.*, 265 A.2d 320, 322 (Del. Super. 1969), *aff'd*, 266 A.2d 879 (Del. Super. Ct. (1970)). In other words, if one loses initially the full loss of use of a member, he can recover only for the total loss of use of that member itself and not additional amounts for an accumulation of the parts of that member. *Magreta v. Ambassador Steel Co.*, 378 Mich. 689, 148 N.W.2d 767 (1967); 99 C.J.S. *Workmen's Compensation* § 308, at 1114 (1958). The plaintiff's reliance on *Bernier v. Mills*, 93 N.H. 165, 37 A.2d 5 (1944), for a contrary result is misplaced. That decision was rendered long before the present statute

enacted in 1973, with its amendments. Even so, the *Bernier* holding that the healing periods awarded for the loss of each of four fingers are concurrent and not cumulative supports the result reached in the instant case.

■ We hold that, as in the case of subsequent amputations, the statute intends that if a person loses the full use of a member, he can recover only for the total loss of that member and not an additional award for the loss of parts which comprise the member. The same reasoning applies to the loss of vision and loss of hearing; a person cannot recover more than the total loss of binaural hearing and the total loss of bilateral vision.

■ Our answer to transferred question "B" is that plaintiff is entitled to awards for the loss of use of two arms, two legs, binaural hearing, and bilateral vision provided for in RSA 281:26 I.

We have been advised that Freeman Corson has died since this case was argued. In the case of death, RSA 281:26 V and RSA 281:22 become material. The issues resulting thereunder have not been raised or argued in the proceedings now before us and we do not address them.

"C. Under RSA 281:37-a, is an attorney's fee of one-third of the award reasonable under the facts of this case?"

RSA 281:37-a provides as follows:

> In any dispute over the amount of benefits payable under this chapter which is appealed to the superior or supreme courts, the employee, if he prevails, shall be entitled to reasonable counsel fees as approved by the court, and interest at the rate of 6 percent per annum on that portion of any award the payment of which is contested; provided that the interest shall be computed from 30 days after award by the commissioner.

The above statute was enacted by Laws 1969, 187:1 effective August 1, 1969. Such statutes have come into being because of the "incompatability between the original idealized theory of compensation administration which was that the benefits would issue automatically according to the clear specifications of the statute, and the actualities of modern compensation administration, in which lawyers are employed by claimants in a majority of compensation cases in many jurisdictions." 2 A. LARSON, WORKMEN'S COMPENSATION 83.10 (Desk ed. 1978). Hence

"reasonable counsel fees as approved by the court" were made available to an injured workman who sought legal redress.

This court has recently held in *Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 371 A.2d 1184 (1977), that a contingent fee of one-third is not per se in excess of a reasonable fee provided in this statute. It also set out relevant factors to be used in the determination of a reasonable fee. They include, "the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his clients." *Id.* at 296, 371 A.2d at 1186.

Plaintiff's counsel maintains that, based on the expectation of a contingent fee, he has represented claimant from February 9, 1976, to date without remuneration. Defendant argues, however, that the substantial part of the work performed by counsel for the claimant concerned that portion of the case, which has already been resolved by the parties, that is, the issue of causal connection. Defendant maintains that "for this portion of [plaintiff] counsel's work he has already been compensated and compensated well." Defendant further argues that the additional effort required to obtain an award for bodily losses under RSA 281:26 "is relatively small." Unless the parties arrive at an agreement, an evidentiary hearing will be necessary. The superior court is better suited than this court to hold such a hearing and to determine the issue of reasonable fees, which is then subject to review by this court.

Our answer to transferred question "C" is that we cannot say as a matter of law based on the record before us whether a fee of one-third of the award under RSA 281:26 would be unreasonable. That issue is to be decided by the superior court by applying the factors set out in *Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 371 A.2d 1184 (1977), to the whole situation in this case.

"D. Is claimant entitled to attorney's fees, in an amount set by the Court, on medical benefits awarded and to be awarded in the future under RSA 281:21?"

■ In certain instances attorney's fees should be allowed for an award of medical benefits. *See, e.g., Carter v. Tom Carter's Wheels, Inc.*, 257 So. 2d 529 (Fla. 1972); *Cavins v. State Accident Ins. Fund*, 272 Ore. 162, 536 P.2d 426 (1975). The defendant represents that the issue of medical payments was never contested, in that only the issue of work connection was in controversy. RSA 281:37-a provides for reasonable counsel fees in "any dispute over the amount of benefits payable under

this chapter." RSA ch. 281. The medical benefits were necessarily part and parcel of the suit for causation; once it was established that Corson's injury was work related he received both total disability payments and medical benefits. We understand that plaintiff was awarded counsel's fees for that proceeding. The record before us does not reveal whether these fees were for all the services that were rendered. Without further fact finding by the trial court, we cannot say whether a further award is appropriate. Our response to question "D", is to remand to the trial court.

"E. Under RSA 281:37-a is Freeman Corson entitled to receive interest on medical benefits awarded him pursuant to RSA 281:21 from the time of such award to the time of payment?"

■ Interest is usually awarded to a claimant to compensate him for the delay on the part of the obligated party to meet its obligations. RSA 281:21 I provides that "an employer . . . or his insurance carrier, shall furnish to an injured employee or cause to be furnished, reasonable medical, surgical, and hospital services . . . ." Since the time of injury and until the superior court decree in plaintiff's favor on the issue of work relatedness, his medical expenses were paid for by Blue Cross and Blue Shield, the employer's group carrier. Thereafter the expenses were paid for by the defendant. No principle of justice or equity would be served by giving an employee an interest payment on top of these timely services paid for by the employer on its insurance carrier. We hold that plaintiff is not entitled to an interest payment on the medical care benefits he has received pursuant to RSA 281:21, and our answer to question "E" is "No".

The case is remanded to the trial court for further proceedings in accordance with this opinion.

*Remanded.*

All concurred.